Filed 2/3/22  P. v. Whisenton CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D078824 |
| Plaintiff and Respondent, | |
| v. | |
| BILLYRAY JOHNLEE WHISENTON, | (Super. Ct. No. C1911741) |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Santa Clara County, Shelyna V. Brown, Judge.  Reversed.

Julie Ann Dunger for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters and Michael P. Farrell, Assistant Attorneys General, Carlos A. Martinez and Catherine Tennant Nieto, Deputy Attorneys General, for the Plaintiff and Respondent.

A jury convicted Billyray Johnlee Whisenton of two counts of sex trafficking of a minor.  (Pen. Code,[1] § 236.1, subd. (c); counts 1 and 2.)[2]  The

---

[1]    Undesignated statutory references are to the Penal Code.

[2]    The jury deadlocked on section 236.1, subdivision (c)(2) allegations that counts 1 and 2 involved fear, coercion, duress, and threat of unlawful injury to the victim or to another person, and on two counts charging Whisenton with taking photographs of T.D. and L.D., who were "person[s] under the age

court subsequently found true allegations that Whisenton had suffered a prior serious felony conviction under the "Three Strikes" law. It sentenced him to 21 years four months in prison.

Whisenton contends that because the People relied upon two different underlying crimes (pimping and pandering) to prove the specific intent element of human trafficking of a minor, the court violated his state and federal constitutional due process rights by failing to give a unanimity instruction. In supplemental briefing, Whisenton argues based on the California Supreme Court's decision in *People v. Moses* (2020) 10 Cal.5th 893 (*Moses I*) and the Court of Appeal's decision on remand, *People v. Moses* (2021) 65 Cal.App.5th 14 (*Moses II*), that the court erroneously instructed the jury regarding the intent required to prove the crime of attempt to traffic a minor under section 236.1. He also claims the instructional errors cumulatively prejudiced him. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

When T.D. was 15 years old, she lived in a group home in Sacramento, where she was friends with a resident, L.D.,[3] who was approximately one year younger than T.D. On June 12, 2017, both girls left the group home, planning to engage in prostitution in Sacramento. The girls first worked for "Big Daddy," a pimp who drove them to San Francisco that night. There, while the girls were on the streets trying to find customers, Whisenton approached L.D. to recruit her to work for him. L.D. discussed that proposal with T.D., and they both agreed to work for Whisenton.

---

of 18 years engaged in an act of sexual conduct" (§ 311.3, subd. (a); counts 3 and 4). The court declared a mistrial as to these charges and allegations.

[3]    L.D. did not testify at trial.

2

Before leaving San Francisco in the early morning, Whisenton picked up his "main girl," K.S., who the girls referred to as "Mama." She was the "boss" of the girls, and taught them "the rules." Both girls told Whisenton and K.S. that they were 18 years old because they were avoiding returning to the group home. Whisenton instructed T.D. and L.D. about his rules, saying that if they did not follow them, he would "beat [their] ass." The girls had to "hand him [their] money," "follow his directions," and work in different cities. Whisenton set the prices they would charge their clients. He promised to feed and shelter them and "keep [them] looking nice" by buying them "clothes and other things." When they arrived in Oakland, Whisenton gave T.D. condoms. He dropped the girls off at a street intersection to work. That morning, T.D. got one client and made $60, which she handed over to Whisenton.

On June 13, 2017, at approximately 7:00 a.m., the group briefly slept in Oakland. Later, K.S. gave T.D. new clothes and more condoms. Whisenton drove K.S. and the two girls to a hotel in San Jose. Whisenton and K.S. subsequently made the girls pose for photographs for an Internet dating website. Whisenton told T.D. the photos needed to be "sexy," and K.S. showed her how to pose. T.D. told Whisenton she did not want to pose for pictures, but he gave her a "mean look" and said she had to do it. Whisenton directed the girls' photo sessions.

The girls left the hotel late that night and started working on the streets in San Jose. At one point, T.D. and L.D. had a loud public argument because T.D. was getting more attention from potential clients. K.S. phoned Whisenton, who arrived and told the girls to "get their asses in the car or he would beat [their] asses." He drove them back to the hotel.

3

On June 14, 2017, Whisenton and L.D. argued loudly at the hotel, and T.D. worried that Whisenton would hit her or L.D. Later that day, when Whisenton and L.D. argued again, Whisenton grabbed L.D.'s cell phone. L.D. became angry and told T.D. she was leaving and asked T.D. to accompany her. T.D. stayed in the hotel room because she was too scared of Whisenton. As L.D. was leaving, Whisenton grabbed her arm and tried to pull her back into the room. Whisenton threatened L.D., "I'm going to kill you, bitch," and, "I'm going to beat your ass." He also ordered her, "Get the fuck back in the room, or it will be worse!" L.D. ran away. Whisenton ordered K.S. and T.D. to pack up their belongings and he drove them to Oakland.

L.D. told a hotel worker that Whisenton was selling her and her sister in the hotel room. The worker testified L.D. "was a young girl . . . [who] was just crying and scared." The worker called 911. A video clip played for the jury showed the worker's interaction with L.D. A police officer responded to the hotel and spoke to L.D. The officer testified L.D. was a minor who was approximately 13 years old.

Later that day, T.D. confided her true age to K.S., saying that she wanted to return to the group home. Whisenton eventually agreed to K.S.'s request to let T.D. go. But he threatened T.D. to never tell anyone what had happened or he would hurt her mother and other family members. T.D. phoned 911 and was subsequently interviewed by a police officer. She did not identify K.S. from a photographic lineup because she was scared Whisenton would carry out his threats. T.D. also denied that Whisenton or K.S. had forced her to do anything.

At trial, a police officer testified as an expert regarding human trafficking, explaining that pandering included the pimp giving the victims directions on how much to charge a client, providing the victims condoms and

4

clothing, driving them to the work area, and protecting them.  The expert explained that pimping and/or pandering behavior also occurs when a pimp directs a more-experienced sex worker to tutor less-experienced victims, as that conduct facilitates prostitution and benefits the pimp financially.

The prosecution introduced cell phone tracking evidence showing Whisenton's cell phone moved from San Francisco to Oakland and San Jose, corroborating T.D.'s testimony regarding their travels to those cities.

Under Evidence Code section 1108, N.D. testified she first met Whisenton in 2016, when she was 19 years old.  Whisenton acted as her pimp for five months during a "romantic" and "business" relationship in which he later became "abusive."  N.D.'s last encounter with Whisenton took place on June 3, 2017, when he went to her job at a liquor store.  She asked him to leave because she did not want to speak to him.  He became angry, raised his voice, and told her, "You're a bitch.  I own you.  You're nothing but a little punk-ass whore.  You're a prostitute.  You will always be a prostitute."

*Counsels' Arguments*

The prosecutor argued to the jury that Whisenton committed two of the predicate crimes of human trafficking.  He explained the elements of pandering under section 266i: "Pandering is taking steps to encourage or facilitate or promote the acts of prostitution by giving [the victims] supplies, clothing, driving them, doing security.  [¶]  It just doesn't require the financial benefit.  The two crimes need to overlap.  And when [Whisenton] did so, the other person was under 18 years of age.  [T.D.] gave us her age, she's 15."  The prosecutor also argued that Whisenton had committed pimping: "So the predicate crimes [*sic*] of 266h is pimping.  And this is essentially the instruction for pimping and the elements for pimping and that [Whisenton] knew that [T.D.] and [L.D.] were engaged in prostitution, that the money

5

earned while engaging in prostitution supported [Whisenton]. [T.D.] describes she turned the money over to [Whisenton], but you don't even need that. [¶] [Whisenton] asked for payment or received payment for soliciting prostitution customers. The deal was, they go out, they walk the streets, they make money, they give the money back. [¶] Even though [L.D.] didn't make any money, there was still the understanding that they were out there to make money and that she was supposed to provide money if she made it. And [T.D.] and [L.D.] were minors under the age of 16. [¶] Prostitution is synonymous with commercial sex."

The prosecutor argued that the online advertisements sufficed for the jury to convict Whisenton for conspiring with K.S.: "When [Whisenton and K.S.] took the pictures and they started to advertise [T.D. and L.D.], they were pimping them out. They were putting them on the market. They were looking for customers. They were engaging in pandering and pimping."

The prosecutor pursued a conspiracy theory, arguing to the jury: "We have two people. We have [K.S.] and we have [Whisenton] and they were both sort of working together to traffic these two young ladies. And they committed acts in furtherance of that conspiracy. [¶] And those are the acts . . . about the defendant driving [T.D.] and [L.D.] to [Oakland]; or driving them to [San Jose]; or directing [them] to pose for photographs [ ]; these are all acts that occurred during the commission of the two and a half day conspiracy to traffic these two young women. [¶] All you have to agree is one of those acts occurred, and that they had an agreement to commit the crime, and you can convict the defendant under a conspiracy theory."

Defense counsel argued his theory of the case to the jury, challenging the victims' credibility, and claiming they were biased against Whisenton. Defense counsel also argued Whisenton's identification was an issue because

6

the prosecution did not perform a DNA analysis of Whisenton or obtain his fingerprints. Defense counsel added: "In this case there was no force and no fear to compel [L.D.] and [T.D.] to get on that street and prostitute. . . . [W]hen they went out on the street, they were intending to do it. Everything they expected to do when they left that group home, turn tricks and make money, happened."

The prosecutor argued in rebuttal that the human trafficking crimes were continuous: "So when the victims in this case got in the car and [Whisenton] began to school them on how it works, as him being their pimp and their being—them being the hoes or the bitches, he makes threats. He continues to make threats. And they're still his property. They're still— they're sex workers or prostitutes until he lets them go. And so as these threats go on . . . . They're still being marketing [*sic*] as property . . . . [¶] This is a continuing crime until the victims are free. And when—when L.D. is getting beat; she's being held; he's threatening her; [Whisenton is] threatening to kill her, she is still his prostitute. He is still trafficking her. She is not free to leave. . . . [¶] Now, what would have happened if [L.D.] didn't break free that day and he pulled her back in the room? She would have been out on dates that night. And so this crime is ongoing."

During jury deliberations, the jury sought clarification as to how "the alleged assault on L.D. in hotel room" fit into the case. The court replied to the jury: "The alleged assault on [L.D.] is considered to have occurred during the time frame that is alleged. However it is not alleged as a separate or distinct crime. It is part and parcel [of] what is portrayed as her experience during those two days." The court added: "[Y]ou are the finders of fact. You have all of the evidence, and you are the finders, whatever you find the facts to be." The court also referred the jury to two jury instructions, including one

on the elements of an uncharged conspiracy.  The court subsequently denied the prosecution's request to reopen closing arguments to tell the jury that human trafficking is a "continuous course of conduct crime," because the prosecution had already argued that point.

DISCUSSION

## I. *Unanimity Instruction*

Whisenton contends that by failing to instruct the jury regarding unanimity, the court violated his constitutional right to a verdict proved beyond a reasonable doubt, as the court had lowered the prosecution's burden of proof.[4]

The People argue the court did not err because no unanimity instruction was required as the human trafficking statute contemplates a continuous course of conduct; moreover, the prosecutor alleged a conspiracy and the jurors were not required to agree on which act Whisenton committed.

## A. *Background*

The parties discussed the unanimity instruction in the context of CALCRIM No. 416 regarding evidence of an uncharged conspiracy, which the defense requested be given in its entirety, including this portion:  "Counts 1 through 4.  [¶]  You may not find the defendant guilty under a conspiracy theory unless all of you agree that the People have proved that the defendant

---

[4]     CALCRIM No. 3500 on unanimity states:  "The defendant is charged with *<insert description of alleged offense>* [in Count ___] [sometime during the period of ___ to ___].

"The People have presented evidence of more than one act to prove that the defendant committed this offense.  You must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act (he/she) committed."

8

conspired to commit at least one of these crimes and you all agree which crime he conspired to commit."

The prosecutor countered that this portion of the instruction should be excluded: "I don't think it's necessary because there's only one conspiracy. There's several crimes, but all of those crimes are subsumed into the uncharged conspiracy and that is to engage in human trafficking."

The court excluded that portion of the instruction: "I'm concerned about this paragraph, because it seems to lessen the People's burden. It seems to say that if you find there's a conspiracy, [Whisenton] is guilty . . . of Counts 1, 2, 3 and 4. [¶] And I want to make sure that the jury goes through the analysis of: [']Did the People meet their burden for each element of Count 1? Did they make their burden for each element of Count 2 and so forth?['] [¶] This [challenged portion of the instruction] seems to suggest that if they find that there is a conspiracy that they can just find him guilty of all of the counts the way that it's worded. So I have a concern about that."[5]

_____

[5]     The court instructed the jury regarding pimping in section 266h: "To prove that the defendant is guilty of pimping the People must prove: [¶] 1. The defendant knew that [T.D.] as charged in Count 1, and [L.D.], as charged in Count 2, were engaging in prostitution; [¶] 2. The money that [T.D.], as charged in Count 1, and [L.D.], as charged in Count 2, . . . earned while engaging in prostitution supported the defendant in whole or in part; and/or the defendant asked for payment or received payment for soliciting prostitution customers for [T.D.], as charged in Count 1, and [L.D.], as charged in Count 2; and, [¶] 3. [T.D.], as charged in Count 1, and [L.D.], as charged in Count 2, were minors under the age of 16 years when they engaged in prostitution."

    The court instructed the jury regarding pandering in section 266i: "To prove that the defendant is guilty of pandering, the People must prove: [¶] 1. The defendant successfully persuaded or procured [T.D.], as charged in Count 1, and [L.D.], as charged in Count 2, to engage in prostitution; [¶] 2. The defendant used promises, threats, violence, or to cause, persuade, encourage

9

B. *Applicable Law*

Under the California Constitution, a unanimous jury verdict is required to convict a person of a crime. (Cal. Const., art. I, § 16; *People v. Russo* (2001) 25 Cal.4th 1124, 1132.) In particular, the jury must agree unanimously that the defendant is guilty of *a specific crime.* (*People v. Diedrich* (1982) 31 Cal.3d 263, 281.) When a defendant is charged with a criminal offense but the evidence suggests *more than one discreet crime,* either the People must elect among the crimes or the trial court must instruct the jurors that they must all agree on the same criminal act. (*People v. Russo, supra*, 25 Cal.4th at p. 1132; accord, *People v. Jennings* (2010) 50 Cal.4th 616, 679 ["when violation of a criminal statute is charged and the evidence establishes several acts, any one of which could constitute the crime charged, either the state must select the particular act upon which it relied for the allegation of the information, or the jury must be instructed that it must agree unanimously upon which act to base a verdict of guilty"]; *People v. Riel* (2000) 22 Cal.4th 1153, 1199.)

However, the court has no sua sponte duty to instruct on unanimity if the offense constitutes a "continuous course of conduct." (*People v. Maury* (2003) 30 Cal.4th 342, 423.) " ' "This exception arises in two contexts. The first is when the acts are so closely connected that they form part of one and the same transaction, and thus one offense. The second is when . . . the statute contemplates a continuous course of conduct of a series of acts over a

---

or induce [*sic*] [T.D.], as charged in Count 1, and [L.D.], as charged in Count 2, to engage in prostitution, although the defendant's efforts need not have been successful; [¶] 3. The defendant intended to influence [T.D.], as charged in Count 1, and [L.D.], as charged in Count 2, to engage in prostitution; and, [¶] 4. [T.D.], as charged in Count 1, and [L.D.], as charged in Count 2, were under the age of 16 at the time the defendant acted."

period of time." ' " (*People v. Napoles* (2002) 104 Cal.App.4th 108, 115-116, quoting *People v. Avina* (1993) 14 Cal.App.4th 1303, 1309.) The court should carefully examine the statute under which the defendant is charged, the pleadings, and the evidence presented to determine whether the offense constitutes a continuous course of conduct. (*Napoles, supra*, at pp. 115-116 [noting that child abuse may be a continuous course of conduct or a single, isolated incident]; *People v. Wolfe* (2003) 114 Cal.App.4th 177, 185 [unanimity instruction required where acts are fragmented in time or space]; *People v. Rae* (2002) 102 Cal.App.4th 116, 123 [elder abuse offense constituted continuous course of conduct]; *People v. Cortez* (1992) 6 Cal.App.4th 1202, 1209 [kidnapping is inherently a continuous course of conduct, eliminating need for unanimity instruction].)

In addition, " '[w]here the acts were substantially identical in nature, so that any juror believing one act took place would inexorably believe all acts took place, the [unanimity] instruction is not necessary to the jury's understanding of the case.' " (*People v. Beardslee* (1991) 53 Cal.3d 68, 93; see also *People v. Champion* (1995) 9 Cal.4th 879, 932, questioned on other grounds in *People v. Ray* (1996) 13 Cal.4th 313, 369, fn. 2.)

"When considering a claim of instructional error, we view the challenged instruction in the context of the instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner." (*People v. Houston* (2012) 54 Cal.4th 1186, 1229.) " '[A]ny theoretical possibility of confusion [may be] diminished by the parties' closing arguments.' " (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1220, overruled in part on another ground in *People v. Rangel* (2016) 62 Cal.4th 1192, 1216.) We will assume the more exacting harmless beyond a reasonable doubt standard applies to the

11

omission of a unanimity instruction.  (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Hernandez* (2013) 217 Cal.App.4th 559, 576 ["There is a split of opinion in the appellate courts as to whether the *Chapman* standard or *Watson* standard for harmless error applies in a unanimity instruction case"; court held alleged error was harmless under either standard].)

C. *Analysis*

The two underlying statutes on which the prosecution based the human trafficking charge in this case, pandering and pimping, have been held to be continuous crimes not requiring unanimity instructions:  "[S]ection 266i (the pandering statute) is somewhat similar to [ ] section 266h (the pimping statute).  Under [ ] section 266h, the offense is one ongoing offense—a defendant deriving support or maintenance from the earnings of a prostitute. [Citation.]  [S]ection 266i, subdivision (c), is similar to section 266h since, once the female is procured for a house of prostitution, the one offense becomes ongoing as long as the female plies her trade in such house.  'The pandering statute and [ ] section 266h (pimping) are both designed to discourage prostitution by discouraging persons other than the prostitute from augmenting and expanding a prostitute's operation, or increasing the supply of available prostitutes.' "  (*People v. White* (1979) 89 Cal.App.3d 143, 151-152.)  As this court pointed out in a case involving pandering and pimping, "The language of the charging document, specifying that the acts  . . . took place over a specified period of time, reflects that the prosecution intended to charge [the defendant] in this manner."  [Citation.]  'This language alerts the jury that the charge consists of a continuous course of conduct, to be proved by evidence of more than one individual act."  (*People v. Leonard* (2014) 228 Cal.App.4th 465, 491-492.)

12

Here, the People charged Whisenton with human trafficking as a continuous course of conduct that occurred "[o]n or about and between June 12, 2017[,] and June 14, 2017, in the Counties of Santa Clara, San Francisco and Alameda, State of California[.]" Likewise, the trial evidence showed Whisenton's ongoing efforts to induce or persuade the minors to engage in commercial sex acts from the moment he recruited them in San Francisco, and spanning the time when he transported them to Oakland, San Francisco and San Jose. Accordingly, there is no reasonable likelihood the jury applied the instruction in an impermissible manner. We point out that Whisenton had the same defenses to both counts, which is that the biased victims were not credible, and he did not use force or fear to induce them to commit prostitution.

II. *Instruction Regarding Human Trafficking*

Relying on *Moses I, supra,* 10 Cal.5th 893 and *Moses II*, *supra*, 65 Cal.App.5th 14, Whisenton contends the trial court misinstructed the jury with CALCRIM No. 1244[6] regarding the required intent element of the

---

[6] Whisenton acknowledges his trial counsel did not object to the giving of this version of CALCRIM No. 1244: "To prove that the defendant is guilty of this crime, the People must prove three elements: [¶] 1. The defendant caused or induced or persuaded or attempted to cause or induce or persuade another person to engage in a commercial sex act. [¶] 2. When the defendant acted, he intended to commit a felony, in violation of [s]ections 266h or 266i . . . ; and, [¶] 3. When the defendant did so, the other person was under the age of 18 years of age. [¶] A commercial sex act is defined as sexual conduct that takes place in exchange for anything of value. [¶] When you decide whether the defendant caused or induced or persuaded the other person to engage in a commercial sex act, please consider all of the circumstances including the age of the person, the relationship to the defendant, and/or the defendant's agent, [K.S.] [¶] Under the law, a person becomes one year older as soon as the first minute of his or her birthday has begun. [¶] The other person's consent is not a defense to this crime. [¶] Being mistaken about the other person's age is not a defense to this crime."

13

attempted human trafficking crime, thus violating his constitutional rights to present a valid defense and due process, as the instruction reduced the prosecution's burden of proof on the critical issue of his state of mind. He specifically argues the prosecutor relied on the attempt prong of section 236.1, subdivision (c): "The same reasoning which led to reversal in [*Moses II*] is applicable here because the same flawed jury instructions were and still are being used. The omission of correct instruction on the specific intent required for an attempt and the inclusion of the instruction that 'being mistaken about the other person's age is not a defense to this crime', affirmatively misdirected the jury in this . . . case on an essential element and 'was plainly wrong' when the prosecution relied on an attempt theory."

Whisenton also argues the instructional error was prejudicial because the jury "did not necessarily believe the heavily impeached testimony of [T.D.], the State's sole eye witness." He points out the jury deadlocked on the force, violence, duress, coercion allegations as to counts 1 and 2 and also on counts 3 and 4. As to those counts, the defense argued that "the State had not proved that [he] knew the two victims were minors because (1) [he] first met them in the early morning hours engaged in sex work in San Francisco, (2) they lied about their ages, and (3) [N.D.] was a petite adult who looked young."

The People counter that the court committed no instructional error because Whisenton "was prosecuted for actual, not attempted human trafficking of a minor," and they disclaim that the prosecutor pursued an alternative theory that Whisenton attempted to induce a minor to engage in a commercial sex act. They also contend any instructional error was harmless beyond a reasonable doubt "[b]ased on the strong evidence of [Whisenton's] guilt of the completed crime of human trafficking of a minor."

14

A. *Background*

As we set forth below, the prosecutor argued to the jury that Whisenton committed human trafficking under both the completed acts prong and the attempt prong of section 236.1, subdivision (c).[7]

The prosecutor created a timeline using T.D.'s statements and Whisenton's location based on his phone records, and in closing arguments stated: "[Whisenton is] at all the same cities, all the same locations that [T.D.] describes almost down to the hour. And we know that the areas that they're in are known prostitution areas. And we have the [Internet] ads that are also time stamped that confirm the timeline, and that they're marketing these kids like meat. This is sex trafficking, ladies and gentlemen." The prosecutor also argued his goal was to show the jury Whisenton was "guilty of trafficking two minors, 15-year-old [T.D.], and 13-year-old [L.D.], between June 12th and June 14th of 2017." The prosecutor showed the jury photographs of T.D. and L.D. at the time of the incident to emphasize how young the girls were: "That's who they are. That's how they looked. They're not 18. They're not 20. They're kids. [¶] Even [the hotel employee], who came in and testified, when she described [L.D.], she said [L.D.] looked really young. [¶] There's no mistaking who they are. There's no mistaking how old they are, not that the age is even an issue in this case, because as the judge read you on the instructions—and I'll talk about more in a minute—mistake as to how old they are is not a defense to this crime." The Prosecutor

---

7      Section 236.1, subdivision (c) states: "A person who causes, induces, or persuades, or attempts to cause, induce, or persuade, a person who is a minor at the time of commission of the offense to engage in a commercial sex act, with the intent to effect or maintain a violation of Section 266, 266h, 266i, 266j, 267, 311.1, 311.2, 311.3, 311.4, 311.5, 311.6, or 518 is guilty of human trafficking."

elaborated: "But [Whisenton is] looking for people like [N.D., who are] small, meager, meek; looking for people like [T.D.]; looking for people like [L.D.]; people who he can exploit, people he can use, people he can dominate, people he can control."

However, the prosecutor also argued to the jury an alternative theory of attempt as follows: "So now I want to talk to you a little bit about the law. And we're going to talk about how the facts fit in with some of the elements of the crime. [¶] Counts 1 and 2 refer to [s]ection 236.1[,subdivision] (c). And these are the elements that the Judge read to you. [¶] It establishes that in order to prove this crime, [the People] have to prove that the defendant caused, or induced, or persuaded, or even attempted to [*sic*]. We don't even have to have completed acts of commercial sex or prostitution, but that the defendant tried to commercially sex traffic these young girls with the intent to do that. [¶] And when the defendant acted he intended to commit a felony violation of [s]ection 266h or 266i."

In rebuttal, the People argued to the jury: "And ladies and gentlemen, you look at . . . the timeline that is established, there's only one reasonable interpretation of this evidence, and that is these victims were sex trafficked and that there was an atmosphere of coercion, force, and duress, that effectuated that during the period of time they were with the defendant." The prosecutor concluded his rebuttal arguments: "At the end of the day, all of this evidence that's been presented to you, it establishes one uncontroverted conclusion and that is the defendant is a pimp. He's a human trafficker. [¶] And he did traffic [L.D.] and [T.D.] between June 12th and June 14th of 2017. And during that period of time, while they choose to get in that car, they were threatened, there was violence used against them. It was apparent and it was used in order to effectuate their continued

16

involvement in commercial sex. And you know what the defendant is capable of. And at the end of the day, that's what is important in terms of making sure that the defendant, as an abusive pimp, is held responsible for the trafficking that he effectuated."

B. *Applicable Law*

We discuss *Moses I* and *Moses II* at length because Whisenton relies on those cases for his arguments. A police detective, in targeting child sexual abuse, created a user profile for a fictitious 21-year-old female named "Bella B." (Bella) on a social network Internet site. (*Moses II, supra,* 65 Cal.App.5th at p. 19.) Assuming the role of Bella, the detective responded to the initial messages of the defendant, Antonio Chavez Moses III, by indicating she was working as a prostitute. In a series of texts that day and the next, the detective eventually responded that Bella was only 17 years old. Moses repeatedly expressed concern that Bella was a police agent, as well as some reluctance to pimp a minor. (*Ibid.*) Moses nevertheless engaged in phone calls and texts with a different detective who assumed Bella's role. Upon hearing Bella was in Orange County, Moses offered to drive to her location and pick her up, even though he acknowledged that was risky. Several days later, when the first detective told Moses that Bella had returned to Orange County, Moses arranged to meet Bella at a restaurant, where the detective who was role-playing Bella said she would wait in a bathroom to evade her current pimp. Bella had told Moses that she wanted to escape from the man because he was beating her. Moses arrived at the restaurant but before their meeting could occur, he spotted vice officers who were staking out the scene. When Moses drove out of the parking lot, police officers conducted a traffic stop and arrested him. (*Ibid.*) The jury convicted Moses of human trafficking

17

of a minor (§ 236.1, subd. (c)(1)), attempted pimping of a minor (§§ 664, subd. (a), 266h, subd. (b)(1)), and pandering (§ 266i, subd. (a)).  (*Moses II,* at p. 19.)

The Court of Appeal reversed Moses's human trafficking conviction, holding that he could not be convicted of human trafficking under section 236.1, but only under the general law of attempt.  (*Moses I, supra,* 10 Cal.5th at p. 898.)

Moses appealed to the California Supreme Court, which reversed the judgment and remanded the matter to the Court of Appeal with directions that it address Moses's instructional error claims.  (*Moses I, supra,* 10 Cal.5th p. 914.)  The Supreme Court began its discussion with an analysis of section 21a, which states, " 'An attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission.' "  (*Moses I,* at p. 899.)  It pointed out that the substantive law of attempt was found in the common law (*ibid.*), and cited several cases supporting its conclusion that "[p]revious cases have consistently looked to section 21a to define the elements of an attempt that has been incorporated into a statute defining the substantive crime."  (*Id.* at p. 903)  It also explained that "[o]ther cases have rejected arguments when the People have sought to evade the application of section 21a for statutes that incorporate an attempt into the definition of a substantive offense."  (*Id.* at p. 904.)

Turning to section 236.1, subdivision (c), the *Moses I* court pointed out that its language "defining human trafficking was 'chosen by the electorate in 2012, some 26 years after the enactment of the statutory definition of "attempt" [citation] and the even earlier adoption of similar language at common law.' "  (*Moses I, supra,* 10 Cal.5th  at p. 907.)

18

The Supreme Court explained the section 236.1 statutory scheme: "The first two subdivisions of section 236.1 define human trafficking as 'depriv[ing] or violat[ing] the personal liberty of another with the intent to obtain forced labor or services,' ([§ 236.1, subd. (a)]), or with 'the intent to effect or maintain . . . violation[s] of' various laws regulating prostitution, pimping and pandering, pornography, and extortion ([§ 236.1, subd. (b)]). Subdivision (c) does not speak of violating a victim's personal liberty. Instead it defines human trafficking another way: the inducement of a minor to engage in commercial sex acts. Subsequent provisions make clear that neither a minor's consent ([§ 236.1, subdivision (e)]), nor a mistake of fact as to a victim's age ([§ 236.1, subd. (f)]), is a defense. Subdivision (c) specifically targets trafficking minors. A *completed* violation of subdivision (c) will, obviously, involve the inducement of a particular person, and that person must be a minor. By contrast, to violate subdivision (c) as an *attempt*, the defendant must *intend* to induce a minor, but the target of that inducement need not be an actual minor. This understanding of the statute supports a conclusion that, as long as the defendant has attempted to induce a person and intends that the object of his inducement be a minor, the elements of the attempt provision are satisfied. This understanding honors the general law of attempt that punishes a criminal intent coupled with an ineffectual act done towards its commission." (*Moses I, supra,* 10 Cal.5th at pp. 907-908, fn. omitted.)

The *Moses I* court clarified that section 236.1, subdivision (c)'s sentence structure "does not reflect an intent by voters to deviate from the established law of attempt. Instead, it conveys the voters' intent that human trafficking of a minor, whether successfully completed or merely attempted, is to be punished in a uniform way." (*Moses I, supra,* 10 Cal.5th at p. 908.)

19

The Supreme Court rejected the People's argument that a defendant need not intend to induce a minor to commit an attempt under section 236.1, subdivision (c): "[A]n attempt under section 236.1[, subdivision] (c) does require as an element that the defendant intend to target a minor, at least where the victim is not in fact a minor. The People would have us reject factual impossibility as a defense to the crime of attempt under section 236.1[, subdivision] (c) while simultaneously refusing to apply another established requirement of that doctrine. We reject the People's argument that Moses could be convicted not only in the absence of an actual minor victim, but also without intent to induce a minor victim." (*Moses I, supra,* 10 Cal.5th at p. 912.)

After reviewing the ballot materials of section 236.1, subdivision (c)'s voter initiative, the Supreme Court concluded that statute operates as follows: "To be convicted of the completed crime of *inducing* a minor to engage in a commercial sex act, the person induced must be a minor. To commit the crime of *attempting to induce* a minor, the defendant must act with the ' "specific intent to commit the [completed] crime" ' [citation], i.e., the intent to cause, induce, or persuade *a minor* to engage in a commercial sex act, at least when no actual minor victim is involved [citation]. The defendant must act with the additional intent to effect or maintain a violation of one of the offenses enumerated in the statute. If these elements are met, the fact that the particular target of his efforts is not actually a minor is not a defense. Under both theories the defendant is guilty of "human trafficking" (§ 236.1[,subd.] (c)) and subject to the same punishment." (*Moses I*, *supra,* 10 Cal.5th at pp. 912-913, footnote omitted.)

The Supreme Court concluded that section 236.1, subdivision (f), which states, " 'Mistake of fact as to the age of a victim of human trafficking *who is*

20

*a minor at the time of the commission of the offense* is not a defense to a criminal prosecution under this section,' " does not apply when there is no actual minor victim: "The statute eliminates a mistake of age defense if the defendant successfully induces a minor, even if acting under a mistake of fact. It does not speak to the converse situation, when the defendant *attempts* to induce a person the defendant actually believes to be a minor but who is in fact an adult. Under the provisions of subdivision (c) and the law of attempt, such conduct is punishable as human trafficking so long as the defendant *intended to induce a minor* to engage in such conduct. There is no inconsistency between disallowing a mistake of age defense when the victim is an actual minor and requiring a specific *intent* to induce a minor when the defendant unwittingly targets a police decoy. Nothing in subdivision (f) speaks to the latter intent requirement." (*Moses I, supra,* 10 Cal.5th at p. 909.)

On remand, the Court of Appeal framed Moses's instructional error claim as follows: "[T]he jury was never instructed that to commit the offense of attempted human trafficking [Moses] had to know or believe that his alleged victim, 'Bella,' was underage. The court's instructions on counts 2 and 3, related to pandering and pimping, similarly did not require knowledge or belief that the victim was a minor." (*Moses II, supra,* 65 Cal.App.5th at p. 18.)

The *Moses II* court held the trial court had erroneously instructed the jury that a mistake about the victim's age was not a defense: "Because the [*Moses I* court] concluded intent to induce a minor victim is required (*at least when there is no actual minor victim*), the trial court's mistake of age instruction was erroneous; it should not have been given because a mistake related to the age of the victim may undermine or contradict the requisite

21

intent to target a minor.  The defendant's mental state regarding the victim's age is critical to the offense under the [*Moses I*] analysis; the jury should not be inhibited by a mistake of age preclusion from fully considering and determining the defendant's actual intent.  The instruction therefore should not be given in the circumstances here, where there is no actual minor victim involved." (*Moses II*, *supra*, 65 Cal.App.5th at p. 23.)

The *Moses II* court added:  "Compounding the inclusion of the erroneous mistake of age language is the fact that the trial court's human trafficking instruction did not tell the jury it had to find Moses intentionally targeted someone he believed was a minor before it could return a guilty verdict." (*Moses II*, *supra*, 65 Cal.App.5th at p. 23.)  It added that the trial court's instructions on pimping (CALCRIM No. 1150) and pandering (CALCRIM No. 1151) included no requirement that Moses intended to target a minor. (*Moses II*, *supra,* at p. 24.)  Accordingly, the Court of Appeal reversed Moses's conviction for human trafficking of a minor under section 236.1, subdivision (c)(1)). (*Moses II*, at p. 29.)

B. *Analysis*

Based on the prosecutor's closing argument set forth above, we agree with Whisenton that the prosecutor argued an attempt theory to the jury by stating that under section 236.1, subdivision (c) the People did not have to prove that Whisenton completed the crime of trafficking the minors; rather, it sufficed that they prove Whisenton attempted to do so as to both victims.

This case involves actual minor victims, the prosecutor's use of an attempt theory as to both victims, and a victim (L.D.) who did not engage in commercial sex.  Under these circumstances, we treat this case as addressing the question left open by *Moses I*, that is the determination of "the interplay between subdivision (f) and the specific intent required for the attempt prong

of section 236.1[, subdivision] (c) when the defendant attempts, but fails, to induce an *actual minor* to engage in a commercial sex act." (*Moses I, supra,* 10 Cal.5th at p. 913, and fn. 10.)

Here, the trial court did not provide the jury with an instruction regarding the specific intent for the attempt prong of section 236.1, subdivision (c). By way of comparison, in a different attempt case brought under section 236.1, subdivision (c), involving a police decoy, the Court of Appeal approved this modified version of CALCRIM No. 1244: "The defendant is charged in count one with attempting to cause, induce, or persuade a minor to engage in a commercial sex act. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant attempted to cause, induce, or persuade a minor to engage in a commercial sex act; [¶] And [¶] 2. When the defendant acted, he intended to commit a violation of pimping or pandering." *"To prove that the defendant attempted to cause, induce, or persuade a minor to engage in a commercial sex act, the People must prove that: [¶] 1. The defendant took a direct but ineffective step toward causing, inducing, or persuading a minor to engage in a commercial sex act; [¶] And [¶] 2. When the defendant acted, the defendant intended to cause, induce, or persuade the minor to engage in a commercial sex act."* (*People v. Clark* (2019) 43 Cal.App.5th 270, 286; italics added.)

Under the long-settled law of attempt set forth in *Moses I*, a defendant's guilt or innocence must be determined based on whether he had a specific intent to commit the crimes. "When . . . ' "a person *commits an* act based on a mistake of fact, his guilt or innocence is determined as if the facts were *as he perceived them*." (*People v. Reed* (1996) 53 Cal.App.4th 389, 396.) Following *Moses I*, we are compelled to conclude that the trial court here erred by failing to instruct the jury regarding the specific intent required for

an attempt under section 1236.1, subdivision (c). Whisenton was therefore deprived of an opportunity to argue as to counts 1 and 2 that he was mistaken as to the victims' ages.

We acknowledge the *Moses I* court's language that the requirement the defendant act with a specific intent as to the attempt prong of section 236.1, subdivision (c) applies "at least when no actual minor victim is involved." (*Moses I, supra,* 10 Cal.5th at p. 913.) However, in light of the court's discussion of the established nature of a specific intent requirement for attempts (*id.* at p. 908 [law "does not reflect an intent by voters to deviate from the established law of attempt"]), we see no analytic way to avoid applying that standard when an actual minor is involved.

We conclude the trial court's instructional error was not harmless in light of the prosecutor's argument that he did not have to prove a completed crime. On this record, we have no way of knowing whether, as to both victims, the jury convicted Whisenton of completed acts or of attempts to traffic a minor. As Whisenton argues, the uncertainty regarding the basis of the jury's finding is exacerbated by the fact the jury deadlocked on two other counts as to which Whisenton was allowed to rely on the mistake of age defense.

We recognize that a specific intent instruction for an attempt under section 236.1 subdivision (c) would appear to vitiate subdivision (f)'s mistake of age defense for the crime of trafficking a minor, although that latter provision shows the electorate clearly intended to target those who traffic minors regardless of whether the defendant knew the age of the victim. However, under *AutoEquity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455-456, we must follow the *Moses I* court's decision to interpret section 236.1, subdivision (c) to require a specific intent instruction when the

24

prosecutor relies on an attempt theory.  Accordingly, we reverse the judgment.

DISPOSITION

The judgment is reversed.


O'ROURKE, Acting P. J.

WE CONCUR:


AARON, J.


IRION, J.

25